UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  §<br>    *Plaintiff*,  §<br>      §<br>v.  §<br>      §<br>1,136.526 ACRES OF LAND, more or less,  §<br>in GOLIAD COUNTY, TEXAS; and  §<br>The County of Goliad, et al.,  §<br>    *Defendants*  § | Case No. 06:11-cv-00005 |

### THE UNITED STATES OF AMERICA'S MOTION AND MEMORANDUM TO STRIKE THE DEFENSES AND OBJECTIONS IN DEFENDANT'S ANSWER, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT

The United States, by and through its undersigned counsel, hereby moves this Court under Rule 12(f)(2) of the Federal Rules of Civil Procedure to dismiss the defenses and objections raised in Defendant Goliad County's Answer (Docket No. 10) because they are legally insufficient to void the government's taking of the subject property in this eminent domain proceeding. In the alternative, the United States moves for partial summary judgment to dismiss the defenses raised in Defendant's Answer on the same grounds. In support, the United States respectfully states as follows:

This is an eminent domain action brought on behalf of the Department of the Navy (the "Navy") to acquire roughly 1,136 acres of property in Goliad County, Texas commonly known as the "Goliad Airpark." The United States initiated this action by filing a complaint and declaration of taking, and by depositing in the registry of the Court $2,363,000, which represents the United States' estimate of just compensation. On April 12, 2011, defendant Goliad County filed an answer asserting ten affirmative defenses and objections, which seek to invalidate this condemnation proceeding. As set forth below, none of these defenses or objections constitutes a

legally valid defense to the taking. Accordingly, these affirmative defenses should be dismissed by this Court.

## STATEMENT OF FACTS

From 1968 until 1994, the Navy owned and operated the subject property as a Navy auxiliary landing field. Naval operations terminated in 1994 under the Defense Base Closure and Realignment Commission ("BRAC") process. In 2000, the Navy determined it no longer needed the subject property and deeded it to Goliad County for one dollar.

In approximately 2007, the Navy completed a report identifying the Goliad Airpark as a possible target for re-acquisition to comply with the operational requirements of the new T-6 Joint Primary Aircraft Training System, which needs longer runways than those existing at other Navy outlying airfields. After becoming aware of the Navy's interest in re-acquiring the subject property, on July 14, 2008, the Goliad County Commissioner's Court unanimously passed a resolution (the "Resolution") offering to sell the subject property to the Navy for $675,000. The Resolution further stated that "Goliad County is willing to negotiate with the Navy in regards to this acquisition." Upon receiving notice of this Resolution, the Navy sought approval from the Office of the Secretary of Defense to proceed with plans to acquire the Goliad Airpark. See Declaration of James F. Leary ¶¶ 4-9 (Exhibit 1).

In September 2008, the Goliad County Commissioner's Court rescinded the Resolution offering to sell the subject property to the Navy for $675,000. The Navy, however, continued to express interest in acquiring the Goliad Airpark, and engaged in on-going communications with Goliad County Judge Harold F. Gleinser about acquiring the Goliad Airpark. Id. ¶¶ 10-11. In February 2009, Judge Gleinser agreed to grant the Navy a Right of Entry to conduct survey,

appraisal, and soil testing work so that the Navy could prepare for potential acquisition of the subject property.  At that time, Judge Gleinser also met in person with the Navy's independent contract appraiser prior to the appraiser's site inspection of the Goliad Airpark.  <u>Id.</u> ¶¶ 11-12.

In April 2010, the Navy made a formal offer to purchase the Goliad Airpark from Goliad County for the appraised amount of $2,363,000.  The Navy included in its offer letter a copy of a statement prepared in accordance with Public Law 91-646 (the Uniform Relocation Assistance and Real Property Relocation Act, 42 U.S.C. § 4601, et seq.).  The statement indicated that the Navy's offer to purchase the Goliad Airpark for $2,363,000 was based on an appraisal prepared by an independent appraiser, which had established that amount as the fair market value of the Goliad Airpark as of that time.  On May 12, 2010, Judge Gleinser notified the Navy that the County Commissioner's Court had voted to reject the Navy's offer.  <u>Id.</u> ¶¶ 13-15.

Thereafter, in September 2010, Assistant Secretary of the Navy (Energy, Installations and Environment) Roger Natsuhara met in person with Judge Gleinser and contacted other Goliad County commissioners by telephone in an effort to negotiate the Navy's purchase of the Goliad Airpark.  On September 9, 2010, the Navy sent a second offer letter to Goliad County, again offering to purchase the Goliad Airpark for $2,363,000, and further offering to explore whether "some accommodation beneficial to the County can be pursued."  On September 27, 2010, Mr. Natsuhara and other Navy officials attended the Goliad Commissioners' Court hearing to answer questions in a further effort to reach an amicable agreement for the purchase of Goliad Airpark.  However, Goliad County never responded to the Navy's second offer to purchase the Property, and that offer expired by its terms on September 28, 2010.  <u>Id.</u> ¶¶ 16-18.

Having exhausted its efforts to acquire the Goliad Airpark by negotiation, and because of

the urgent need to commence construction activities prior to flight operations scheduled to begin in 2012, the Navy determined there was no practicable alternative that would meet its requirements other than proceeding with condemnation to acquire the fee simple interest in the Goliad Airpark. On October 1, 2010, the Navy submitted a condemnation report ("Condemnation Report") to Congress pursuant to 10 U.S.C. § 2663(f), which sets forth certain pre-condemnation procedures and requirements. The Condemnation Report recited the statutory authority and public purpose for the Navy's acquisition of the Goliad Airpark, and stated that all efforts to negotiate the purchase of the property by voluntary acquisition had failed. The Condemnation Report concluded that condemnation of fee simple title to the Goliad Airpark was necessary. Id. ¶¶ 20-23. Thereafter, on February 11, 2011, the United States, on behalf of the Navy, filed a complaint and declaration of taking in this action.

## ARGUMENT

In its Answer, Defendant Goliad County has asserted ten affirmative defenses and objections, and requests that the Court deny the United States the right to condemn the subject property.[1]  Answer at 4. It is well-settled that "the sole defense to a condemnation action is that the United States lacks the authority to take the interest sought in the complaint in condemnation." United States v. 162.20 Acres of Land, 639 F.2d 299, 303 (5th Cir. 1981).  The Fifth Circuit has recognized that judicial review in condemnation actions "is limited to 'the bare issue of whether the limits of authority were exceeded.'" Id.

As explained below, none of Goliad County's affirmative defenses or objections

---

[1] Under Rule 71.1, which controls this proceeding, if a defendant has an objection or defense to a taking, it must be raised in its answer (rather than in a motion to dismiss). Fed. R. Civ. P. 71.1(e). A defendant waives all objections and defenses not stated in its answer. Id.

constitutes a valid defense to this condemnation action. Therefore, to foreclose needless discovery and expense litigating these issues, the United States asks the Court to dismiss these defenses and objections as insufficient under Rule 12(f), or alternatively, to dismiss these defenses and objections by partial summary judgment under Rule 56. Elimination of these meritless defenses and objections will allow the parties and the Court to focus on the one justiciable issue in this case: the amount of just compensation owed for the taking.

Rule 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although motions to strike are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law. Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1057 (5th Cir. 1982). In eminent domain cases, district courts routinely dismiss affirmative defenses that do not constitute valid challenges to the government's authority to condemn the subject property. E.g., United States v. 416.81 Acres of Land, 514 F.2d 627, 630-32 (7th Cir. 1975); United States v. 13.10 Acres of Land, 737 F. Supp. 212, 219-220 (S.D.N.Y. 1990). In such cases, courts may dispose of the invalid defenses and objections by striking them under Rule 12(f), see United States v. 187.40 Acres of Land, 381 F. Supp. 54, 56-57 (M.D. Pa. 1974) (granting government's motion to strike invalid defenses raised by landowner in eminent domain case), or by issuing partial summary judgment dismissing those defenses under Rule 56. See United States v. Union County 16.29 Acres of Land, 35 F. Supp. 2d 773, (D. Ore. 1997) (granting partial summary judgment dismissing invalid defenses challenging government's condemnation authority).

A.  **Compliance with the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 is Not a Valid Defense to the Taking, and the Navy Has Fully Complied with Requirements Under This Statute.**

Goliad County's first affirmative defense is that the United States failed to comply with the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Public Law 91-646, 42 U.S.C. §§ 4601, et seq. (the "URA"). This assertion does not constitute a legally valid challenge to the Navy's authority to take the subject property, because an agency's alleged failure to comply with the URA is not a valid defense in a condemnation action. See United States v. 131.68 Acres of Land, 695 F.2d 872, 876 (5th Cir. 1983); United States v. 320.0 Acres of Land, 605 F.2d 762, 822 n. 134 (5th Cir. 1979).

In enacting the URA, Congress specifically refrained from creating any private right of action for non-compliance, and Section 102(a) of the URA in effect precludes judicial review of agency actions by providing that compliance "shall not affect the validity of any property acquisitions by purchase or condemnation." 42 U.S.C. § 4602(a); see also 131.68 Acres of Land, 695 F.2d at 876; 320.0 Acres of Land, 605 F.2d at 822 n. 134. Accordingly, this court does not have jurisdiction to review the Navy's alleged non-compliance with the URA. Cf. Paramount Farms, Inc. v. Morton, 527 F.2d 1301, 1305 (7th Cir. 1975) (finding that Congress intended to foreclose judicial review of agency compliance with URA provisions); United States v. 416.81 Acres of Land, 525 F.2d 450, 454 (7th Cir. 1975) (dismissing objection raised in condemnation proceeding based on agency's alleged non-compliance with URA).

Further, even if this were a valid defense, the Navy has fully complied with all provisions of the URA. The URA exhorts that, "to the greatest extent possible," an agency should make every reasonable effort to negotiate the purchase of the property by obtaining an appraisal and

offering to purchase the property for an amount determined to constitute just compensation. See 42 U.S.C. § 4651. Here, the Navy followed these guidelines by making every reasonable effort to negotiate the purchase of the Goliad Airpark for $2,363,000, which was the amount determined by an independent appraiser to be the fair market value of the property at that time. See Leary Decl. ¶¶ 12-18. It was only after Goliad County had repeatedly rejected the Navy's offers to purchase the subject property that the Navy initiated this condemnation action. Accordingly, the County's defense based on the Navy's alleged non-compliance with the URA has no basis in law or fact, and should be dismissed.

**B.    Failure to Offer Adequate Just Compensation and Failure to Make All Reasonable Efforts to Negotiate Are Not Valid Defenses to the Taking, and the Navy Did Make All Reasonable Efforts to Negotiate the Purchase of the Property.**

The second defense raised by Goliad County is that the Navy has failed to offer just and adequate compensation for the property and has failed to make every reasonable effort to acquire the property by negotiation prior to condemnation. Answer ¶ 2. Neither of these assertions constitutes a legally valid challenge to the Navy's authority to condemn the Goliad Airpark.

With respect to the County's objection to the adequacy of the just compensation offered, the amount of just compensation owed for the taking is a factual question that will be determined at trial.[2] Federal Rule of Civil Procedure 71.1, which governs this proceeding, expressly distinguishes between "objections and defenses to the taking," which must be asserted in the

---

[2] To the extent the County's objection is directed at the deposit, the $2,363,000 deposit represents only an estimate of just compensation, and is not binding on either party. United States v. Miller, 317 U.S. 369, 381 (1943). The ultimate amount of just compensation may be greater than, or less than, the amount of the deposit. Under Rule 71.1(j), if the ultimate award of just compensation is greater than the deposit, the United States will pay the difference plus interest; if the award is less than the deposit, the United States is entitled to seek restitution for the overpayment from Goliad County. Fed. R. Civ. P. 71.1(j).

defendant's answer, and "the amount of just compensation paid," which is to be determined "at the trial on compensation." See Fed. R. Civ. P. 71.1(e), (h).  Both parties will have an opportunity to present evidence on the amount of just compensation at trial.  Accordingly, Goliad County's objection to the adequacy of just compensation is an invalid defense.

Moreover, as discussed below in response to Goliad County's third and fourth affirmative defenses, there is no requirement that the Navy make "all reasonable efforts" to negotiate the purchase of the Property prior to initiating this action.[3]  Furthermore, even if negotiations were required, the pre-condemnation record reveals that the Navy did make all reasonable efforts to negotiate a purchase of the Goliad Airpark.  In fact, Goliad County initiated these negotiations in the summer of 2008, with passage of the Resolution offering to sell the Goliad Airpark for $675,000, and expressly indicating the County's willingness to negotiate with the Navy.  See Leary Declaration ¶¶ 6-9.  After two years of ongoing communications and in-person meetings with the County regarding this acquisition, and after having been twice rebuffed and rejected in its efforts to negotiate the purchase of the Property for the appraised amount of $2,363,000, the Navy was left with no choice but to initiate this condemnation action.  Accordingly, Goliad County's second affirmative defense has no basis in law or fact and should

---

[3]In a recent condemnation case in this district brought on behalf of the Department of Homeland Security for acquisition of land as part of a project to construct a fence on the United States/Mexico border, the district court found that provisions in the authorizing legislation required the agency to conduct negotiations with the landowner prior to commencing condemnation proceedings. United States v. 1.04 Acres of Land, 538 F. Supp. 2d 995, 1010-1015 (S. D. Tex. 2008).  The 1.04 Acres decision, however, was unique to the border fence litigation.  Negotiations are not required in this case because the authorizing legislation contains no provision requiring negotiations with the landowner.  Id. at 1008-09 (Finding that unless the authorizing legislation requires negotiations, an attempt to reach an agreement with the owner for the purchase of the property is not a condition precedent to condemnation proceedings).

be dismissed.

**C. The Navy Has Met All Conditions Precedent to Filing this Condemnation and Has Fully Complied with the Procedures Set Forth in 10 U.S.C. § 2663.**

The third and fourth affirmative defenses asserted by Goliad County are that the Navy has failed to meet all conditions precedent to filing this action, and has failed to abide by the procedures set forth in 10 U.S.C. § 2663. Answer ¶¶ 3, 4. These affirmative defenses challenging the Navy's authority have no merit, because the Navy has met all conditions precedent and has fully complied with the provisions of 10 U.S.C. § 2663. As stated in Schedule A of the complaint (Docket No. 1) and the declaration of taking (Docket No. 2), the authority for this taking is set forth in Public Law 111-84, which authorizes the acquisition of land required for an operational facility for the T-6A aircraft at Naval Air Station Corpus Christi, Texas, using funds appropriated for such purposes on December 16, 2009 (Public Law 111-117), and 10 U.S.C. § 2663, which authorizes the Department of the Navy to acquire land by condemnation for certain military purposes.[4]

Neither Public Law 111-84 nor Public Law 111-117 sets forth any conditions precedent to the filing of this action. The only conditions precedent are set forth in 10 U.S.C. § 2663, which requires, in pertinent part:

(a) **Acquisition of land by condemnation for certain military purposes.**

---

[4] The authority granted to the Secretary of the Navy in 10 U.S.C. § 2663 is delegated to the Assistant Secretary of the Navy (Energy, Installations, and Environment) in SECNAVINST 5430.7Q, dated 21 August 2009. On January 14, 2011, Assistant Secretary of the Navy (Energy, Installations and Environment) Jackalyne Pfannensteil delegated authority to Acting Assistant Secretary of the Navy Roger Natsuhara for the period from January 18, 2011 through January 21, 2011. See Memo for Distribution from Jackalyne Pfannensteil dated January 14, 2011 (Exhibit 2). On January 19, 2011, Acting Assistant Secretary of the Navy Natsuhara exercised that authority by executing the declaration of taking in this case.

(1) Subject to subsection (f), the Secretary of a military department may have proceedings brought in the name of the United States, in a court of proper jurisdiction, to acquire by condemnation any interest in land, including temporary use, needed for - -

(A) the site, construction, or operation of fortifications, coast defenses, or military training camps;

* * *

(f) **Advance notice of use of condemnation**

(1) Before commencing any legal proceedings to acquire any interest in land under subsection (a), including acquisition for temporary use, by condemnation, eminent domain, or seizure, the Secretary of the military department concerned shall - -

(A) pursue, to the maximum extent practicable, all other available options for the acquisition or use of the land, such as the purchase of an easement or the execution of a land exchange; and

(B) submit to the congressional defense committees a report containing - -

    (i) a description of the land to be acquired;

    (ii) a certification that negotiations with the owner or owners of the land occurred, and that the Secretary tendered consideration in an amount equal to the fair market value of the land, as determined by the Secretary; and

    (iii) an explanation of the other approaches considered for acquiring use of the land, the reasons for the acquisition of the land, and the reasons why alternative acquisitions strategies are inadequate.

(2) The Secretary concerned may have proceedings brought in the name of the United States to acquire the land after the end of the 21-day period beginning on the date on which the report is received by the committees, or, if over sooner, the end of the 14-day period beginning on the date on which a copy of the report is provided in an electronic medium pursuant to section 480 of this title.

10 U.S.C. § 2663(a), (f).

In this case, the Navy fully complied with the conditions precedent set forth in 10 U.S.C.

§ 2663(f).  In September 2010, after having exhausted its negotiation efforts, and in light of the urgent need to begin construction activities prior to flight operations scheduled to commence in 2012, the Navy determined there was no practicable alternative that would meet its requirements other than proceeding with condemnation proceedings to acquire the fee simple interest in the Goliad Airpark.  Leary Decl. ¶¶ 19-20.  On October 1, 2010, the Navy submitted the Condemnation Report to the congressional defense committees, which contained the information required by the statute.  Leary Decl. ¶¶ 21-22.  Subsequently, the Navy waited longer than the required 21-day period before filing this action on February 11, 2011.  Thus, the Navy complied fully with all conditions precedent and procedures set forth in 10 U.S.C. § 2663, and accordingly, Goliad County's third and fourth affirmative defenses should be dismissed.

**D.    The Navy Has the Authority to Proceed Pursuant to the Declaration of Taking Act, 40 U.S.C. § 3114.**

The fifth affirmative defense raised by Goliad County is that the Navy exceeded its condemnation powers by proceeding under the Declaration of Taking Act, 40 U.S.C. § 3114 (1931).  Answer ¶ 5.  This affirmative defense is without merit, because it is well-settled that any agency authorized to acquire property by condemnation has authority to proceed pursuant to the Declaration of Taking Act.  See Kirby Forest Indus., Inc. v. United States, 467 U.S. 1, 4-5 (1984). The Declaration of Taking Act provides:

> In any proceeding in any court of the United States outside the District of Columbia brought by and in the name of the United States and under the authority of the Federal Government to acquire land, or an easement or right of way in land, for the public use, the petitioner may file, with the petition or at any time before judgment, a declaration of taking signed by the authority empowered by law to acquire the land described in the petition, declaring that the land is taken for the use of the Government.

40 U.S.C. § 3114(a).  Under the plain language of the statute and the applicable case law, the

Navy is authorized to proceed under the Declaration of Taking Act by virtue of its condemnation authority. Accordingly, Goliad County's fifth affirmative defense does not constitute a valid defense to the taking and should be dismissed.

### E.  Estoppel is Not a Valid Defense to the Taking.

The sixth defense raised by Goliad County is that the Navy is estopped from acquiring the subject property by condemnation. Answer ¶ 6. In its answer, Goliad County does not explain how the common-law doctrine of estoppel applies to this Federal condemnation case. This is for good reason, because estoppel is generally not a valid defense to a condemnation suit. See generally United States v. 87.30 Acres of Land, More or Less, in Whitman and Garfield Counties, State of Wash., 430 F.2d 1130, 1132 (9th Cir. 1970); United States v. 18.16 Acres of Land, More or Less, Situate in Granville County, State of N.C., 598 F. Supp. 282, 288-290 (D.C.N.C.1984). Furthermore, "there is a longstanding presumption that estoppel against the government is impermissible." United States v. Southland Management Corp., 288 F.3d 665, 681 (5th Cir. 2002) (citing Office of Personnel Mgmt. v. Richmond, 496 U.S. 414, 419-20 (1990) (recognizing that "equitable estoppel will not lie against the Government as it lies against private litigants"). Here, there is no basis in law or fact to support Goliad County's assertion of an estoppel defense. Accordingly, this affirmative defense should be dismissed.

### F.  The Taking of the Goliad Airpark by Eminent Domain is Not Unconstitutional and is Not in Violation of the Due Process Clause.

The seventh and eighth defenses raised by Goliad County are that the taking is unconstitutional and violates the due process clause. Answer ¶¶ 7, 8. Neither of these assertions constitutes a valid challenge to the Navy's authority to condemn the subject property. The Constitution allows the United States to acquire private land for public use so long as just

compensation is provided to the landowner. U.S. Const. Amend. V ("nor shall private property be taken for public use, without just compensation"). The first element of the takings clause, "for public use," requires the taking be authorized by Congress; once an authorized public use is shown, the only question for trial is the amount of just compensation owed. See Berman v. Parker, 348 U.S. 26, 32-34 (1954). Here, the Navy has asserted a valid and authorized public use for the taking – namely that it will be used for military purposes as a Naval Outlying Landing Field. See Decl. of Taking, Sch. A. Thus, the taking is not unconstitutional.

With respect to Goliad County's due process assertion, the Fifth Circuit has stated that "in an exercise of the power of eminent domain, due process requires that the owners be given an opportunity to be heard on the issue of compensation." United States v. 8.41 Acres of Land, 680 F.2d 388, 395 (5th Cir. 1982). Here, Goliad County will have every opportunity to be heard on the issue of just compensation at trial, and thus its assertion that this taking violates the due process clause lacks merit. Accordingly, Goliad County's seventh and eighth defenses do not constitute valid defenses to the taking, and should be dismissed.

**G.    Failure to State a Claim is Not a Valid Defense to the Taking.**

The ninth defense raised by Goliad County is that the United States has failed to state a claim upon which relief can be granted. Answer ¶ 9. This assertion does not constitute a valid challenge to the Navy's authority to condemn the subject property. While this type of "boilerplate" affirmative defense may be typical in other civil actions, it is not valid in a condemnation case because the government, as the condemning authority, does not have a claim to state in this proceeding. Rather, it is the defendant/landowner who has a claim for just compensation. Accordingly, Goliad County's ninth affirmative defense does not constitute a

valid defense to the taking, and should be dismissed.

## H.    The Supreme Court's Decision in Dalton v. Spector Is Wholly Inapposite and Does Not Bar the Navy from Bringing This Condemnation Action.

The tenth affirmative defense raised in Goliad County's answer alleges that this condemnation action somehow runs afoul of the Supreme Court's decision in Dalton v. Spector, 511 U.S. 462 (1994), which held that the President's decision to close a military base was unreviewable under the Administrative Procedure Act ("APA").  Answer ¶ 10.  Specifically, Goliad County asserts in its answer that this condemnation suit "would amount to an improper judicial review of the 1991 decision to close the military installation at this location."  Id.  This assertion is based on either a misunderstanding of Dalton or condemnation law, or both.

The Dalton case has no bearing or applicability to this case.  Dalton concerned a claim brought under the APA challenging the Executive Branch's decision to close a military base under the BRAC recommendations.  Dalton, 511 U.S. at 464.  The Supreme Court first held that the BRAC's recommendations were not reviewable "final agency actions" under the APA – only the President's decisions were final.  The Court then held that challenges to the President's final determinations must fail because the President's decision to close a military base was beyond judicial review.  Id.

Unlike Dalton, this case does not amount to "improper judicial review" of the prior decision to close the Navy's Goliad facility.   To the contrary, the Navy's substantive decision to establish a military facility in Goliad County is not under judicial review.  Indeed, the Court is prohibited from reviewing the wisdom of the Executive Branch's decision to reestablish a military facility in the context of this condemnation action.  United States v. 2,606.84 Acres of Land in Tarrant County, 432 F.2d 1286, 1289 (5th Cir. 1970) (holding that courts do not second-

guess governmental agencies on issues of necessity). The only semblance of similarity between Dalton and this case is that the Goliad Airpark, like the property in Dalton, had been closed under the BRAC process. The narrow holding in Dalton, however, cannot be turned on its head to somehow bar the United States from ever condemning the subject property simply because it once had been closed under the BRAC process. Thus, Goliad County's tenth defense based on the holding in Dalton is invalid and should be dismissed.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court dismiss the affirmative defenses and objections raised in Goliad County's answer.

Respectfully submitted,

        Respectfully submitted,

        JOSÉ ANGEL MORENO
        United States Attorney

        JOHN A. SMITH, III
        Assistant United States Attorney
        Deputy Civil Chief
        800 N Shoreline Blvd , Suite 500
        Corpus Christi, TX 78401
        Tel: 361-888-3111
        Fax: 361-888-3200


        *s/Jimmy A. Rodriguez*
        JIMMY A. RODRIGUEZ
        Assistant United States Attorney
        Attorney in Charge
        Southern District of Texas
        Texas Bar No. 24037378
        Federal ID No. 572175
        919 Milam, Suite 1500
        P.O. Box 61129
        Houston, Texas 77208
        Tel: (713) 567-9532
        Fax: (713) 718-3303
        Email: Jimmy.Rodriguez2@usdoj.gov

        JEFFREY M. TAPICK
        Trial Attorney, U.S. Department of Justice
        Environment & Natural Resources Division
        Post Office Box 561
        Washington, D.C. 20044-0561
        Telephone: (202) 305-0297
        Facsimile:  (202) 305-0398


        Attorneys for the United States of America

CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and sent a copy via electronic mail to the following counsel:

Kimberli Deagen Loessin
Barron & Adler, LLP
1001 McKinney, Suite 400
Houston, Texas 77002

*s/Jimmy A. Rodriguez*
Assistant United States Attorney
